UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARY WILLIAMS,

                        Plaintiff,

-against-

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, NASSAU COUNTY
CORRECTIONAL CENTER, MARY ELISABETH
OSTERMAN, in her individual and official capacity,
ANTONIO PATINO, in his individual and official
capacity, SERGEANT STEVEN O'MALLEY, in his
individual and official capacity, ACTING SHERIFF
MICHAEL J. SPOSATO, in his individual and
official capacity, and OFFICER PHIL LONIGRO,
in his individual and official capacity,

                        Defendants.
----------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 30 2017 ★

LONG ISLAND OFFICE

MEMORANDUM AND ORDER

15-CV-7098
(Wexler, J.)

APPEARANCES:

    LAW OFFICES OF FREDERICK K. BREWINGTON
    BY: Frederick K. Brewington, Esq.
    Attorney for Plaintiff
    556 Peninsula Boulevard
    Hempstead, New York 11550

    BEE READY FISHBEIN HATTER & DONOVAN, LLP
    BY: Deanna D. Panico, Esq.
    Attorneys for Defendant
    170 Old Country Road, Suite 200
    Mineola, New York 11501

WEXLER, District Judge:

    Plaintiff Mary Williams ("Plaintiff") brings this action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000(e) *et seq.*, 42 U.S.C. §§1981 and 1983, and New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296, by creating a hostile work environment and retaliating against her in response to her complaints about that environment. Defendants County of Nassau ("the County"), Nassau County Sheriff's

Department ("Sheriff's Department"), Nassau County Correctional Center ("NCCC"), Mary Elisabeth Ostermann ("Ostermann"), Antonio Patino ("Patino"), Sergeant Steven O'Malley ("Sergeant O'Malley"), Acting Sheriff Michael J. Sposato ("Sheriff Sposato"), and Officer Phil Lonigro ("Lonigro"), move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion, Docket Entry ("DE") [18]. For the reasons that follow, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

The facts alleged in the complaint are briefly summarized for the purposes of the motion. Plaintiff is an African-American female who has been employed by the Nassau County Sheriff's Department as a corrections officer for approximately 15 years. On September 16, 2014 at about 7:30 a.m., Plaintiff, who was assigned to the Medical Unit at the NCCC, observed the letters "KKK" and what appeared to be a likeness of a swastika etched on a door frame within the Medical Unit leading to the dental office. According to Plaintiff, detainees had no access to that area and "the symbols were in a place that could only have been made by someone that worked alongside Plaintiff." Complaint ("Compl.") ¶36, DE [1]. Plaintiff immediately reported her observation to her superior, defendant Sergeant O'Malley, and filed an inter-departmental report. In the report, she requested an internal investigation.

Subsequent to the submission of the inter-departmental report, an officer from Internal Affairs, Correction Officer Pierce, arrived to take photographs. Correction Officer Firth also appeared in the Medical Unit and took photographs. Neither Pierce nor Firth interviewed Plaintiff, nor did they "take immediate measures to ensure Plaintiff's safety." Compl. ¶37. While Pierce and Firth were in the Medical Unit, a dental assistant "made insensitive and unwelcome statements and remarks about the markings" in Plaintiff's presence. *Id.* ¶38.

Although Plaintiff claims she communicated to Sergeant O'Malley her distress, she was not provided any coverage and had to finish her shift. Plaintiff also notified the Union Vice President of the incident that same day.

Despite Plaintiff's request for an investigation, no one contacted her or asked her any questions for one week after the incident. Plaintiff then initiated contact with defendant Patino, the EEO Affirmative Action Specialist. Patino advised her that the incident had been reported to defendant Sheriff Sposato. Plaintiff received an EEO Complaint Form, which she completed and returned within two days. On September 22, 2014, Sheriff Sposato issued Order No. 24-14 to all departments as a "reminder" to employees that the display or distribution of materials that showed hostility or aversion to a group would not be tolerated, and that anyone found to have engaged in such conduct would be subject to disciplinary action.

On October 6, 2014, Plaintiff met again with Patino and with Defendant Ostermann, Equal Employment Opportunity Director, to review the findings of the investigation. During that meeting, Ostermann reported that nothing could be done because there were no cameras in the area and there were no witnesses. Ostermann concluded that the investigation "wasn't going anywhere," and stated that the incident was not going to be further investigated. Compl. ¶56. Plaintiff attempted to assist the investigation by referring Ostermann to a co-worker who had also seen the etchings, but Ostermann declined to interview the co-worker. No one was ever disciplined for the offensive etchings.

On October 17, 2014, an incident occurred between Plaintiff and Defendant Lonigro, a co-worker. Plaintiff claims that Lonigro, who was not assigned to work in the area, was aggressive and verbally abusive toward her and that his actions were unprovoked. Shaken and fearful, Plaintiff left early that day. She reported the incident to her supervisor through an inter-

departmental memo as it was clear to her that "this disrespectful and embarrassing act of retaliation and discrimination was a direct response to her opposing and raising issues about the racist symbols found in her work area and having filed a report and complaint about them." Compl. ¶68. She further alleges that Lonigro felt free to address her as he did because she is a black woman. Despite her written complaint, no one contacted Plaintiff to investigate this incident with Lonigro.

On November 14, 2014, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR"). She also filed a complaint with the Equal Employment Opportunities Commission ("EEOC").

On February 6, 2015, Plaintiff was notified that she would be reassigned to another department and that she would be on the night shift, which starts at 1:00 a.m. Prior to this re-assignment, Plaintiff had been working a day shift from 8:00 a.m. to 4:00 p.m. that she claims was given to her as an accommodation to allow her to care for her daughter who suffers from seizures. She had worked this shift at the Medical Unit for nine years. On February 9, 2015, Plaintiff submitted a written request to be moved to a day shift and to be moved to a different department. She was ultimately re-assigned to the Security Platoon Department and works from 8:00 a.m. to 4:00 p.m. one week, and 4:00 p.m. to 12:00 a.m. the following week.

Plaintiff's complaints to the NYSDHR and EEOC have been dismissed. At her request, the NYSDHR dismissed her complaint for administrative convenience. On September 17, 2015, the EEOC issued a right to sue letter that notes that the "Charging Party wishes to pursue matter in Federal District Court." Dismissal and Notice of Rights, Compl., Ex. A. On December 8, 2015, Plaintiff commenced this action asserting claims of discrimination and retaliation under Title VII, 42 U.S.C. §§ 1981 and 1983, and NYSHRL §296 as well as municipal liability under

42 U.S.C. §1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). Defendants move to dismiss all claims.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in plaintiff's favor. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The plaintiff must plead sufficient facts to state a "claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Id.* at 678-679; *see also Twombly*, 550 U.S. at 555 (holding that a "formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level."). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Employment discrimination claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). To

survive a motion to dismiss, however, "the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give 'plausible support to the reduced requirements' of the *prima facie* case." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 662 (E.D.N.Y. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see also Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009) (though the complaint need not establish a *prima facie* case, the claim "must be facially plausible, and must give fair notice to the defendants of the basis for the claim."). The plaintiff does not lose the benefit it receives from that burden-shifting, and "[t]o the same extent that the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishings of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under *Iqbal*." *Littlejohn*, 795 F.3d at 310-311.

**B. Consideration of Exhibits**

As a threshold issue, Plaintiff asks the Court to disregard exhibits submitted by Defendants as part of their motion. *See* Declaration of Deanna Panico ("Panico Decl."), DE [18-2]. Generally, if the court considers matters outside the pleadings on a motion under Rule 12(b)(6), the motion must be treated as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). Under recognized exceptions to this rule, however, the court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation, alteration, and citation omitted).

The exhibits at issue are a copy of the order issued by Sheriff Sposato ("Sposato Order"), Panico Exhibit B, and a copy of a letter dated November 6, 2014 ("Letter"), Exhibit C. The Sposato Order was explicitly quoted and identified by date and order number in the complaint. Compl. ¶51. In light of this allegation, the Court finds that the Sposato Order was incorporated by reference and may be considered. As to the Letter, although it appears on its face to have been sent by Plaintiff, she states in her opposition papers that it was "created by Defendants." Plaintiff's Memorandum of Law in Opposition at 11, DE [20]. As there may be a dispute as to the document's authenticity, the Court will not consider it in deciding this motion.

### III. DISCUSSION

#### A. Dismissal of Claims against the Sheriff's Department and the NCCC

It is well-established that under New York law, departments are administrative arms of the municipality without a separate legal identity and therefore cannot be sued. *See Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). Both the Sheriff's Department and the NCCC are arms of Nassau County and are not suable entitites. *See Joseph v. Nassau Cnty. Corr. Ctr.*, 2013 WL 1702162, at *9, n.5 (E.D.N.Y. Apr. 19, 2013). Accordingly, the claims against these defendants are dismissed.

#### B. Title VII Claims[1]

##### 1. Hostile Work Environment

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

---

[1] Defendants broadly interpreted Plaintiff's complaint as asserting a disparate treatment claim under Title VII in addition to the clear claims of hostile work environment and retaliation. The Court does not read the complaint to include a disparate treatment claim, a reading borne out by Plaintiff's failure to address any such claim in her opposition.

§ 2000e–2(a)(1). Plaintiff alleges that Defendants violated Title VII by creating or allowing a hostile work environment.

To establish a hostile work environment claim, a plaintiff "must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). To determine hostility or abusiveness of an environment, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367 (1993).

Defendants argue that a single isolated event, the doorway etchings, cannot meet the threshold for a hostile work environment. Plaintiff's complaints are not limited to that event, however, and encompass other events such as insensitive remarks from her co-workers, verbal harassment from a colleague, and Defendants' refusal to investigate racist etchings as well as interview a witness. She also alleges that the events interfered with her work performance and impacted her psychologically. While it is unclear whether Plaintiff will ultimately prevail on this claim, construing all the facts in favor of the Plaintiff, and looking at the totality of the circumstances, the Court finds that the Complaint plausibly states a claim. *See Littlejohn*, 795 F.3d at 311 (vacating dismissal of employment discrimination claim and noting that "while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming

forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent"). Of course, defendants may renew their arguments after discovery in a motion for summary judgment.

### 2. Retaliation

Plaintiff alleges that Defendants retaliated against her in violation of Title VII when she complained internally and to the NYSDHR. Title VII prohibits an employer from retaliating against an employee who opposes an unlawful practice or participates in an investigation or proceeding. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Littlejohn*, 795 F.3d at 315–16 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). There is no dispute that Plaintiff engaged in a protected activity when she filed her complaint, and that her employer was aware of the complaints. Defendants argue, however, that plaintiff did not suffer an adverse employment action when she was transferred to another unit following her complaint, and that there is no causal connection between her complaint and the transfer and change of shift.

The Second Circuit has held that an adverse employment action occurs, when an employee, suffers "a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Defendant argues that Plaintiff never worked the overnight shift and that her schedule was only changed every other week, and therefore Plaintiff did not suffer any adverse employment action. Nevertheless, Plaintiff maintains that placing her on an evening shift for half of her shifts interferes with her

ability to care for her disabled daughter which in turn interferes with her ability to perform her job functions and was designed to force her to resign. A shift change that is merely inconvenient may not rise to the level of an adverse employment action. *See, e.g., Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) ("[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." (internal quotation and citation omitted)). A change in assignment may constitute an adverse employment action, however, depending on the circumstances of the case. *See, e.g., Amador v. All Foods, Inc.*, CV 12-1715, 2013 WL 1306305, at *5 (E.D.N.Y. Feb. 20, 2013) (denying motion to dismiss, noting that "it is possible that Plaintiff's shift change may constitute an adverse employment action."), *adopted by* 2013 WL 1282353 (E.D.N.Y. Mar. 27, 2013); *Forsythe v. New York City Dep't of Citywide Admin. Servs.*, 733 F. Supp.2d 392, 401 (S.D.N.Y. 2010) (denying summary judgment in part because "an employment action that affects child care may, but does not necessarily, constitute an adverse employment action."); *Cruz v. Liberatore*, 582 F. Supp. 2d 508, 524 (S.D.N.Y. 2008) (a transfer may be an adverse employment action where it "affects a parent's ability to spend time with and care for a child"). Given Plaintiff's allegations regarding her childcare needs, which were known to Defendants, she has plausibly claimed that there was an adverse employment action.

Defendant also argues that Plaintiff has not alleged a causal link between her complaint and her re-assignment. To establish causation, a Plaintiff must establish "that the retaliatory actions 'closely followed,' the protected activity or that there was a 'reasonably close temporal proximity' between the two." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 229 (E.D.N.Y. 2014) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013)). There is

no "bright line" test of temporal proximity. Here, there was a gap of less than five months between Plaintiff's initial complaints regarding the doorway etchings and her re-assignment, and less than three months between her filing of the NYSDHC complaint and the re-assignment. Courts have found time gaps of greater duration to be sufficiently close to give rise to an inference of retaliation. *See Summa*, 708 F.3d at 128 (seven-month gap was not "prohibitively remote"); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (passage of "only six months" was "sufficient to support an inference of a causal connection"); *Caputo v. Copiague Union Free Sch. Dist.*, No. CV 15-5292, -- F. Supp. 3d --, 2016 WL 6581865, at *8 (E.D.N.Y. Nov. 4, 2016) (seven month gap not too attenuated to preclude showing of causal relationship between plaintiff's protected activity and adverse employment action, especially when viewed together with other allegations).

The Court finds that the facts as alleged sufficiently state a retaliation claim, and Defendant's motion to dismiss that claim is denied.

### 3. NYHRL Claims

Title VII and NYSHRL claims are treated the same for purposes of analysis. *Schiano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (hostile work environment and retaliation claims subject to same standards under federal and New York state law). Defendants argue that Plaintiff's NYHRL claims are barred because she failed to file a notice of claim as required under New York law. Plaintiff does not suggest that she, in fact, served a notice of claim upon the County, but rather argues that no notice of claim is required under New York General Municipal Law §§ 50-e and 50-i.

Courts have held that the General Municipal Law is limited to tort claims and does not apply to employment discrimination cases brought under the NYHRL. *See Anderson v. Nassau*

11

*Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y. 2008). Claims against a *county*, however, are governed by New York County Law §52(1), which imposes a broader notice of claim requirement for claims "against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity." N.Y. COUNTY LAW § 52(1); *see also Johnson v. Cnty. of Nassau*, No. 10-CV-06061, 2014 WL 4700025, at *23 (E.D.N.Y. Sept. 22, 2014) (concluding that "the notice of claim requirement set forth in [County Law §52] covers employment discrimination claims brought under the NYSHRL"). As such, "the notice of claim requirements apply to the plaintiff's claims against Nassau County and the individual defendants acting in their official capacities." *Anderson*, 558 F. Supp. 2d at 303. Since Plaintiff failed to timely file a notice of claim, the NYHRSL claims are dismissed. *See Mills v. Monroe Cnty.*, 59 N.Y.2d 307, 308, 451 N.E.2d 456, 464 N.Y.S.2d 709 (1983) ("[w]hen an employment discrimination action is brought against a county under the State or Federal civil rights statutes, the failure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court").

**D. Remaining Claims**

<u>1. Discrimination Claims under Sections 1981 and 1983</u>

Plaintiff's claims of race discrimination under Sections 1981 and 1983 are analyzed under the same standards as her Title VII claims. *See Ruiz v. City of Rockland*, 609 F. 3d 486, 491 (2d Cir. 2010). Accordingly, the claims asserted under those statutes also survive this motion. *See, e.g., Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (the elements are generally the same and "the two must stand or fall together").

## 2. Section 1983 Conspiracy

Plaintiff suggests that the Defendants conspired with one another to discriminate against her because of her race. To the extent Plaintiff's claim can be read to include a conspiracy claim under section 1983, that claim must fail. "It is well-settled that, under the intracorporate conspiracy doctrine, an entity cannot conspire with itself." *Michael v. Cnty. of Nassau*, No. 09-CV-5200, 2010 WL 3237143, at *5 (E.D.N.Y. Aug. 11, 2010); *see also Rodriguez v. City of New York*, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008) (noting that "[t]he intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."). Municipalities are covered by this doctrine. All of the individual defendants were Nassau County employees, each acting within the scope of his or her employment. Accordingly, any conspiracy claim regarding their conduct is barred by the intracorporate conspiracy doctrine and is hereby dismissed.[2]

## 3. *Monell* Claim

A municipality such as Nassau County may be liable under Section 1983 for any "custom or policy" that causes a "deprivation of rights protected by the Constitution." *Monell*, 436 U.S. 690-91. Liability may be imposed if the municipality is deliberately indifferent to the constitutional violations of its employees. Where there are repeated complaints of such violations, "[d]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995); *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) ("The means of establishing deliberate

---

[2] The Court notes that Plaintiff's memorandum in opposition did not contest Defendants' arguments in favor of application of the intracorporate conspiracy doctrine.

13

indifference will vary given the facts of the case and need not rely on any particular factual showing"), (citing *City of Canton v. Harris,* 489 U.S. 378, 109 S. Ct. 1197 (1989)).

Plaintiff claims that there is pattern and practice of permitting discrimination and a hostile work environment at the County, the Correctional Center, and the Sheriff's Department, and that Defendants failed to investigate or correct that conduct and failed to follow their own rules and procedures. In addition to her own situation, she references other cases in which Defendants allegedly failed to investigate race discrimination claims. At this stage in the proceedings, the Court takes as true Plaintiff's allegations and finds she plausibly states a *Monell* claim. Thus, the motion to dismiss that claim is also denied.

## IV. CONCLUSION

Plaintiff's claims against the Nassau County Sheriff's Department and the Nassau County Correctional Center are dismissed. Defendants' motion is granted as to the conspiracy claims and the NYSHRL claims, and is denied in all other respects.

SO ORDERED.

/s/ LEONARD D. WEXLER
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 30, 2017